IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| Patty Lovaas, President Elkhorn Hot Springs, Inc., Patty Lovaas, Administrator BCPLMT, Beaverhead County Public Lands Management Trust,<br><br>            Plaintiff,<br><br>     vs.<br><br>United States Forest Service,<br><br>            Defendants. | CV-07-72-BU-SEH-RKS<br><br><br>**<u>FINDINGS AND<br>RECOMMENDATIONS</u>** |

1.   Background and Status.

This case has a complex history.  After substantial motion practice Plaintiffs were granted leave to file their Third Amended Complaint (TAC).  C.D. 43. Certain TAC counts and their associated Defendants have been dismissed.  C.D. 91.  This case has come down to judicial review of administrative action based upon an

administrative record.  The remaining parties[1] have filed cross motions for summary judgment.  C.D. 75, 83.  The motions are fully briefed and ripe for disposition.

Plaintiffs (Elkhorn collectively) challenge decisions of the United States Forest Service Beaverhead-Deer Lodge National Forest (BDNF).  The court has jurisdiction to review agency action under the Administrative Procedure Act (APA) 5 U.S.C. §701 et seq., 28 U.S.C. §1331.  An order of Hon. Sam E. Haddon dated August 6, 2008, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A), (B) for all pretrial purposes including findings and recommendations on dispositive motions such as these.  C.D. 37.

2.  Standards for Decision

The parties each move for summary judgment under Rule 56(c), Federal Rules of Civil Procedure.  The parties cite and recognize the standards for such

---

[1] The Third Amended Complaint does not explain how each of the named Plaintiffs has a right to administrative review.  For the purposes of this decision it is clear that the business Elkhorn Hot Springs, Inc. and the alleged permittee, Ms. Lovaas, have standing sufficiently alleged.

motions: summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986), <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247 (1986).  These motions are based upon and require review of an administrative record.  C.D. 60.

Elkhorn challenges the BDNF's compliance with the National Environmental Policy Act, 42 U.S.C. §4321, et seq.  The Administrative Procedure Act provides specific standards by which to measure that compliance.  An agency action will be set aside if it is arbitrary, capricious, an abuse of discretion or not in accordance with law.  5 U.S.C. §702, §706(2)(A).  <u>Marsh v. Oregon Nat. Res. Council</u>, 490 U.S. 360, 371 (1989), <u>Lujan v. Natl. Wildlife Fed</u>., 497 U.S. 877, 882 (1990).

3.  Facts

Elkhorn owns and operates a recreational hot springs resort and conducts associated activities under a special use permit within the Beaverhead-Deer Lodge National Forest.  Plaintiff's Statement of

Uncontroverted Fact, C.D. 77 ¶2 and ¶3. (PSUF 2,3)[2]. Elkhorn operates its business under the special use permit located within one unit and adjacent to another unit (PSUF 2,3) of the discrete parcels of BDNF land which were considered for fuels reduction as part of what will be referred to as the Grasshopper Fuels Process. (GFP).

On June 20, 2005, the BDNF published a Record of Decision, (ROD). Federal Defendants' Statement of Uncontroverted Fact, C.D. 85, ¶1. (FSUF 1). The decision concluded a three-year process of evaluating the potential environmental impact of four described alternative approaches to the GFP, a proposed fuels reduction project on some of the approximately 16,500 acres land within the jurisdiction of the BDNF and the United States Bureau of Land Management. The lands are located in the Grasshopper Valley of southwestern Montana.

This case concerns the 1838 acres of land in the

---

[2]This matter is submitted upon the Administrative Record. These findings refer to the parties' statements of Uncontroverted Fact for east of reference.

Grasshopper fuels reduction program that are part of the Beaverhead-Deer Lodge National Forest.  FSUF 8,9.  The environmental impact study was done to determine the impact of mitigating the effect of potential future fires through each of the four considered fuel reduction alternatives.  FSUF 5.  BDNF selected the third of the four considered alternatives described in the Final Environmental Statement (FEIS) as the alternative of choice for the GFM project. FSUF9.

   Alternative 3 described a proposed program of different fuel reduction activities for each of 54 different units -- administratively identified parcels of land.  The activities are discussed at length in the FEIS.  The activities are discussed specifically for each unit proposed to be treated.  The proposed fuel reduction activities are tailored to the specific ecosystems and fuels conditions found on each of the 54 distinctly described and often physically separated treatment units of Alternative Three which are scattered throughout the Grasshopper Valley.  Those ecosystems are described and the effect of the proposed

fuels reduction program on each is throughly analyzed in the FEIS.

Many of the treatment units are not located near enough to Elkhorn's business to affect it. Treatment is now ongoing under the plan adopted. Elkhorn does not argue that the FEIS' factual basis or analysis was flawed or deficient with respect to any of the 54 units of Alternative 3. The Record of Decision was subject to administrative appeal by an aggrieved party. 36 CFR, 215.11. Elkhorn did not appeal the ROD which selected Alternative 3.

Three entities did file two timely administrative appeals of the Record of Decision: the Alliance for the Wild Rockies/Ecology Center and the Native Ecosystems Council. The appeals said that the FEIS had failed to adequately consider numerous environmental impacts on many of the 54 individual Alternative 3 units chosen for treatment. FSUF 11. Forest Service Regulations, 36 CFR, 215.17, required the BDNF to informally negotiate with the two appellants to attempt to administratively resolve the appeal. BDNF and the administrative

appellants did negotiate; they were successful.  In a letter dated October 21, 2005, the Forest Service and Appellants memorialized their agreement to resolve the appeal.  Administrative Record Section C, documents 21 and 23.

This letter is the main focus of Elkhorn's attack.  The letter states that the BDNF would "drop" seven specified units.[3]  "Drop" in the entire context of the letter means that BDNF will not immediately conduct fuels mitigation activities within those units in the future (as the adopted Alternative 3 contemplated)and will not conduct them at all without giving the Appellants additional advance notice and an opportunity to be heard.  The agreement thus contemplates that BDNF may do less fuel reduction work than Alternative 3 of the FEIS evaluated.  BDNF reserves the complete discretion to decide to treat all 54 units as alternative 3 analyzes.  The 7 units the BDNF agreed to at least defer treating comprise 369 acres, FSUF 15.

With the letter agreement the FEIS and the ROD

---

[3] Units 1a, 17, 20, 28a, 28b, 32a and 32b.  FSUF 15.

became final because the three appellants withdrew the only two appeals.  Elkhorn had never appealed the ROD.  There was no impediment to the decision becoming final upon the withdrawal of the appeals.

One of the 7 "dropped" units that are the subject of the October 21, 2005 letter is located closely enough to Plaintiff's property to potentially affect Plaintiffs' risk of fire.  FSUF 18.  Other Alternative 3 units which affect Plaintiffs, including the parcel (Unit 3a) within which Plaintiff's business is located, were to be treated as Alternative 3 provides.  FSUF 18.  Of 17 treatment units considered in Alternative 3, totaling 472 acres, which the FEIS found could potentially affect Elkhorn, one unit, denominated unit 1a, which contains 38 acres, was deferred under the October 21, 2005, letter. FSUF 18.

As part of the ongoing fuel reduction process and as contemplated by Alternative 3, the BDNF awarded a contract called a Stewardship Contract to perform some of the work.  That contract was eventually awarded to Sun Mountain Lumber on July 24, 2007. The contract did

not alter in any regard the Alternative 3 analysis of the FEIS. Awarding the contract implemented part of Alternative 3. The remaining fuel reduction was to be accomplished in other ways. FSUF 26. The fuels reduction program work continues to date.

    4.   Specific Issues

              A.   THE PARTIES' ARGUMENTS

Elkhorn argues that the entire FEIS and ROD process must be declared void. Elkhorn says that both are void because Elkhorn did not receive sufficient notice of the informal appeal resolution discussions that resulted in withdrawal of all appeals and in finalization of the adoption of Alternative 3. Elkhorn also argues that the entire process is void because BDNF during the informal appeal resolution process agreed  that it may not implement the fuel reduction program in all of the 54 administrative units of preferred alternative 3 chosen in the ROD. Elkhorn says its challenge to the FEIS and ROD is timely despite its failure to timely appeal the ROD because the Forest Service's decision to award a contract as

the ROD planned is final agency action and Elkhorn has timely appealed that action.

The Forest Service replies that the FEIS is the requisite "hard look" at all contemplated agency action and that the ROD entered after that process complied in all respects with NEPA and with the Administrative Procedure Act. BDNF asserts that the ROD became final when the appeals were withdrawn. After the decision became final the BDNF was authorized to pursue the fuels management program up to the extent of Alternative 3. BDNF says it has the discretion to determine how and when to carry out the day to day tasks to implement Alternative 3. BDNF argues that Plaintiffs' action is barred because it is untimely.

B. THE NATIONAL FOREST MANAGEMENT

Elkhorn seeks relief in part because BDNF allegedly violated the National Forest Management Act, 16 U.S.C. §1604, The National Environmental Policy Act, 42 U.S.C. §4321 and the Administrative Procedure Act, 5 U.S.C. §§701, et seq. Elkhorn's briefing refers in passing to the National Forest Management Act but makes no

substantive argument based upon that act.  This decision makes no further reference to that act.

### C.   REVIEW FRAMEWORK

NEPA does not create a private right of action so courts review agency compliance with NEPA action under the review provisions of the Administrative Procedure Act. Lujan v. Nat'l Wildlife Federation, 497 U.S. 877, 882(1990).

This case is a review of BDNF actions implementing NEPA.  NEPA requires a "hard look" at agency action that significantly affects the quality of the human environment.  NEPA does not apply to agency decisions to refrain from such action.  Compare 42 U.S.C. §4331(a) and Department of Transp. v. Pub. Citizen, 541 U.S. 752, 768 (2004) with National Wildlife Federation v. Espy, 45 F. 3d, 1337, 1344 (9th Cir. 1995).  The essence of Elkhorn's complaint is that the BDNF refrained from impacting and maintained the status quo on 7 units of the 54 units it had originally analyzed treating.

The ROD and FEIS complied in all regards with all

requirements. Implementing them is within the discretion of the BDNF. Elkhorn is attempting to review non-final agency action. The undersigned recommends that the Third Amended Complaint be dismissed with prejudice.

### D. FINAL AGENCY ACTION

Neither the October 21, 2005 letter agreement between the appellants and the BDNF, nor the "Stewardship Contract" award are final agency action. The Plaintiffs petition for judicial review must be dismissed on that basis.

A fair reading of the October 21, 2005 letter shows that is not final agency action. The BDNF "dropped" seven units from the treatment Alternative 3 contemplated. Within the context of the letter the BDNF has deferred but it has not permanently abandoned the fuel reduction program on those units. BDNF has reserved its ability to proceed with fuel reduction on some or all of those units but agreed to do so only after notice to and negotiations with the three environmental advocacy groups who filed timely

administrative appeals of the ROD appellants.  As a result of the letter informally resolving appeals, the ROD and FEIS became final.  Once that decision has been made, BDNF retains discretion to determine precisely how to implement it.

Under the Administrative Procedure Act, given the circumstances that exist here, where there is no identified discrete action an agency is required to take, a party may only challenge final agency action. 5. U.S.C. §702, 5.U.S.C. §551(13), <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55, 61-62.  Elkhorn has not cited any authority to suggest that the BDNF lacks discretion to determine how to implement Alternative 3 once adopted, subject to the limits on the environmental impact of its actions analyzed in the FEIS.  The outer parameters within which the BDNF must act, even after the letter agreement with the Appellants that resolved their appeals, were set by the FEIS and ROD.  <u>Forest Service Employees for Environmental Ethics v. USFS</u>, 397 F. Supp. 2d 1241, 1248 (D. Mont. 2005).

Elkhorn now disagrees with how the BDNF is exercising its discretion under the ROD but cloaks its disagreement in the guise of a NEPA argument.  Elkhorn did not appeal the ROD.  The October 21, 2005 letter agreement does not provide a jurisdictional basis for a later appeal.  The BDNF had taken a hard look at the environmental impact of alternative 3. Elkhorn was content with that analysis and did not appeal.  Elkhorn cannot review the agency's day to day operations which may result in less impact than contemplated.  <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 899 (1990), <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 66-67.

Plaintiffs then assert the award of the "Stewardship Contract" to an outside contractor is final agency action providing Elkhorn a later basis for <u>appealing the ROD</u>.  That contract award only implements the ROD.  Elkhorn did not appeal the ROD even though it explicitly contemplated the "Stewardship Contract" as part of the selected fuels reduction process.  Implementation decisions are not final agency action,

especially where, as here, they are expressly contemplated in the ROD.  <u>Montana Wilderness Assoc., Inc. v. U.S. Forest Serv</u>. 314 F. 3d 922, 924 (9th Cir. 1999), <u>Montana Snowmobile Ass'n v. Wildes</u>, 103 F. Supp. 2d 1239, 1242 (D. Mont. 2000).

Elkhorn's suit must be dismissed as an untimely attempt to appeal final agency action.  The court lacks jurisdiction.

E.  THE FEIS ANALYZES, IT DOES NOT MANDATE

Much of Elkhorn's argument flows from a flawed premise.  Elkhorn's argument presumes that because the BDNF evaluated the environmental impact of Alternative 3 in its entirety, then BDNF must carry out Alternative 3 in its entirety.  Therefore, Elkhorn argues, by implementing an Alternative 3 which causes less environmental impact than contemplated the BDNF has violated NEPA and the entire process, including all contracts granted under it must be voided.  Here Elkhorn would like the court to hold that examining the effects of a fuels reduction program obligates the agency to cause those effects.  Elkhorn cites no

authority for this premise because none exists.

Elkhorn's argument misstates the purpose of NEPA. NEPA requires the Agency to take a hard look at the environmental consequences of potential Agency actions before deciding whether to undertake them. Metcalf v. Daley, 214 F. 3d 1135, 1141 (9th Cir. 2000). Under NEPA The Agency may not proceed oblivious to the environmental impact of its actions. It must have available and utilize for its decision, information about its major actions significantly affecting the quality of the human environment (42 U.S.C. §4331(a)). It must carefully consider that information and make the information available to the larger audience. Metcalf v. Daley, 214 F. 3d 1141. Department of Transp. v. Pub. Citizen, 541 U.S. 752, 768 (2004). Here the Agency assembled the information, analyzed it in the FEIS and made that information available to the wider audience including Elkhorn. Elkhorn did not object in any way to the analysis undertaken in the FEIS. Elkhorn's argument actually controverts the purpose of NEPA because Elkhorn argues that the BDNF

should undertake more action with an impact on the environment than the BDNF intends.

BDNF took the required hard look. The rest, up to a maximum of the work Alternative 3 contemplates, is within BDNF's discretion. Elkhorn has cited no authority that obliges the BDNF to cause the maximum amount of impact it considered.

### F.   NOTICE

Elkhorn argues that the BDNF did not give required public notice of the informal appeal resolution discussions and the resulting letter that resolved those appeals. First Elkhorn argues that BDNF violated 36 C.F.R. §215.17(c) and especially agency policy directive AR C-01 by not incorporating the required notice language. That argument fails for at least two reasons.

First, the policy directive does not apply here. The policy directive became effective on August 9, 2005 after the appeals were filed and the informal appellate negotiation process began. The ROD was announced on June 25, 2005, triggering the appellate process well

before the policy directive became effective.  Elkhorn has cited no authority that a violation of this policy would, if applied, require voiding the FEIS and ROD. The Court has found none.

Second, the notice question is moot.  BDNF complied with the substance of appeal resolution process notice which is the subject of this policy direction in AR C-01.  Discussions which occurred by telephone conference call were not closed to the public.  Notice of the time and method for participation were posted on the BDNF website as agency policy direction AR C-01 would have required had it applied. FSUF 36, 37, 41, 46 and 47.

Finally Elkhorn is only repeating in the guise of lack of notice its argument that decisions to defer action on some parcels violated NEPA.  The appeal resolution did not diminish in any way the hard look BDNF took at the potential impact of fully implementing Alternative 3. Elkhorn had full notice of the analysis behind Alternative 3. The impact may have been lessened because the decision was made to at least delay treatment on 7 units leaving the status quo in place.

Once again Elkhorn's argument attempts to ignore the distinction between the BDNF's requirement under NEPA to take a hard look at the BDNF's day-to-day discretion in how to carry out its programs.  Elkhorn's notice arguments fail.

  5.  Conclusion

Elkhorn did not appeal the final agency action of which it now complains.  The court lacks jurisdiction to continue.  Elkhorn confuses BDNF's duty under NEPA to take a hard look at the potential impact of its proposed action, with the agency's discretion to decide how to carry out the project once it had properly decided to do so.  The remaining counts in the Third Amended Complaint should be dismissed with prejudice.

  6.  <u>NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT</u>

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo

determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 18th day of September, 2009.

/s/Keith Strong  
Keith Strong  
United States Magistrate Judge